NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>Plaintiff,<br><br>v.<br><br>**JOSEPH A. FERRIERO**<br><br>Defendant. | Criminal Action No. 13-592 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendant Joseph A. Ferriero's motion for bail pending appeal pursuant to 18 U.S.C. § 3143(b)(1) and Federal Rule of Criminal Procedure 38(b). (D.E. No. 182). The government opposed the motion. (D.E. No. 189). The Court did not hold oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, Ferriero's motion is DENIED.

**I.     PROCEDURAL HISTORY**

An in-depth procedural history and factual background of the instant case can be found in the Court's January 15, 2015 Opinion, (D.E. No. 35), and December 1, 2015 Opinion, (D.E. No. 171). Accordingly, for the purposes of the instant motion, the Court will address only the procedural history and factual background that is relevant.

On September 11, 2013, a federal grand jury sitting in Newark, New Jersey returned a five-count indictment against Ferriero (the "Indictment"). (D.E. No. 1, Indictment ("Ind.") at 1). On April 16, 2015, a jury found Ferriero guilty on Counts One, Three, and Five of the Indictment. In particular, the jury found Ferriero guilty of: violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count One); violating the Travel Act, 18

U.S.C. § 1952(a) (Count Three); and committing wire fraud in violation of 18 U.S.C. § 1343 (Count Five).

On December 4, 2015, Ferriero was sentenced to thirty-five months imprisonment. (*See* D.E. No. 177). On December 28, 2015, Ferriero filed a notice of appeal. (D.E. No. 180). The instant motion for bail pending appeal was filed on January 13, 2016. (D.E. No. 182).

## II.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3143(b)(1):

The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for writ of certiorari, be detained, unless the judicial officer finds—

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

   (i) reversal,

   (ii) an order for a new trial,

   (iii) a sentence that does not include a term of imprisonment, or

   (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Under this statute, there is a presumption in favor of post-conviction detention. *United States v. Miller*, 753 F.2d 19, 23-24 (3d Cir. 1985).

Accordingly, for bail pending appeal to be appropriate, the defendant must establish that:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for the purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*Id.* at 24. Following *Miller*, amendments were made to § 3143(b)(1)(B) to include the language set forth in (iii) and (iv). *See United States v. Malik*, No. 08-614, 2010 WL 276323, at *2 n.2 (E.D. Pa. Jan. 21, 2010). Thus, the application of the fourth *Miller* prong must also include consideration of whether the question on appeal will "likely result in . . . a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[1]  *See id.* at 2; *see also* 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv).

The substantial question analysis under prong three of the *Miller* standard requires a determination that the question on appeal is (1) "significant," *Miller*, 753 F.2d at 23, and (2) "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful," *United States v. Smith*, 793 F.2d 85, 88 (3d Cir. 1986). A question on appeal is deemed "significant" if it is "fairly debatable," meaning that "the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. *Id.* at 89 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)) (emphasis and alterations in original). Accordingly, the substantiality of the question on appeal is determined on a case-by-case basis. *Id.*

After determining that the question raised on appeal is substantial, the court "must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." *Miller*, 753 F.2d at 23. This cannot, however, be read as meaning that the district court must believe that its own decision is likely to be reversed. *Id.*

---

[1] Both Ferriero and the government agree that *Miller* is still instructive. Both parties cite to *Miller* and state that, "[w]here the appeal challenges the conviction and not just the sentence, at least one 'substantial issue' must apply to every count on which a term of imprisonment was imposed." (D.E. No. 182, Ferriero's Motion for Release Pending Appeal ("Def. Mov. Br.") at 2; D.E. No. 189, Government Opposition Brief ("Gov. Opp. Br.") at 2 (acknowledging and accepting the standard set forth in Ferriero's brief)).

Rather, the "language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal." *Id.* Indeed, "[a] question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved." *Id.* Reversal is "likely" if "the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.*

## III. DISCUSSION

With respect to the first two prongs of the *Miller* standard, there does not appear to be any dispute. The Court does not believe that Ferriero is likely to flee or pose a danger to the safety of any other person or the community if his release is continued. Nor does the Court believe that Ferriero's appeal is for the purpose of delay. *See* 18 U.S.C. § 3143(b)(1)(A)-(B). Accordingly, the Court will focus its analysis on the remaining two *Miller* prongs.

On appeal, Ferriero asserts arguments as to Counts One, Three, and Five. The Court will address each argument in turn.

### A. Count One: Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

Under Count One of the Indictment, Ferriero was found guilty of violating the New Jersey Bribery Statute, N.J.S.A. 2C:27-2(a). Each violation of the New Jersey Bribery Statute served as a predicate racketeering act under RICO.

The New Jersey Bribery Statute states, in relevant part, that:

> A person is guilty of bribery if he directly or indirectly offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
>
> a. Any benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant party official or voter on any public issue or in any public election.

N.J.S.A. 2C:27-2(a). "[B]enefit as consideration" is defined as "any benefit not authorized by law." N.J.S.A. 2C:27-2.

Ferriero proffers the following arguments with respect to Count One: (1) that the New Jersey Bribery Statute is unconstitutionally vague and overbroad; (2) that the government failed to present sufficient evidence that he undermined the integrity of a public action; and (3) that the New Jersey Bribery Statute cannot serve as a predicate act under RICO.

### 1. *Vagueness and Overbreadth Challenge*[2]

On appeal, Ferriero contends that the New Jersey Bribery Statute is unconstitutionally vague and overbroad because, as applied to an unpaid party official who is a practicing attorney and business consultant, the definition of "benefit as consideration . . . has no apparent frame of reference." (Def. Mov. Br. at 3). In particular, Ferriero states that "[i]t is not clear, nor does the indictment suggest, what law, if any, existed in New Jersey articulating the benefits a party official was 'authorized' to receive and from whom." (*Id.*). Moreover, Ferriero asserts that the statute runs afoul of the First Amendment, which opens the door for a facial vagueness challenge. (*Id.* at 4-5).

As the government correctly notes, Ferriero's current vagueness and overbreadth challenge is slightly different than the challenge he raised during his pre-trial motions. There, Ferriero argued that the New Jersey Bribery Statute criminalized all of his conduct while serving as a party official. (D.E. No. 10 at 19). On the instant motion, Ferriero contends that the definition "benefit not authorized by law" is unclear and provides no frame of reference. (Def. Mov. Br. at 3). Given

---

[2] Ferriero also asserts that his vagueness and overbreadth arguments apply to Count Three as well. (Def. Mov. Br. at 3). For the same reasons discussed herein, the Court concludes that the arguments raised on appeal do not warrant bail pending appeal under the *Miller* standard as to Count Three.

that Ferriero failed to raise this specific argument before the District Court, it is likely that the Third Circuit may review the argument on appeal under the plain error standard.

Pursuant to Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." *See* Fed. R. Crim. P. 52(b). On plain error review, it must be shown that: (1) there was an error; (2) the error was plain; and (3) the error affected substantial rights. *United States v. Antico*, 275 F.3d 245, 265 (3d Cir. 2001). Moreover, "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993).

In its January 15, 2015 Opinion on Ferriero's pre-trial motions, the Court discussed, at length, the Overbreadth and Vagueness Doctrines, including the analyses applicable under each doctrine. (*See* D.E. No. 35, January 15, 2015 Opinion at 16-42). Accordingly, the Court need not outline those Doctrines here.

The Court concludes that, for the same reasons addressed in the January 15, 2015 Opinion, Ferriero's constitutional challenges to the New Jersey Bribery Statute are not "fairly debatable." First, the Court concludes that case precedent and legislative history provide a frame of reference as to the exact conduct that is proscribed under the New Jersey Bribery Statute. As the Court previously noted, the New Jersey Bribery Statute "proscribes bribery in official and political matters." (*Id.* at 19). The Statute, entitled "Bribery in official and political matters," sets forth that a person guilty of bribery must accept a "benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a *public servant*, *party official* or voter on any *public issue* or in any *public election*." N.J.S.A. 2C:27-2a. (emphasis added).

6

However, the statute is still limited in scope in that it only criminalizes a "benefit not authorized by law." *See* N.J.S.A. 2C:27-2. The purpose of the statute is not to penalize party officials for their private professional activities. *See State v. Ferro*, 320 A.2d 177, 181 (N.J. Super. Ct. App. Div. 1974). Rather, legislative history of the predecessor statute, N.J.S.A. 2A:93-6, suggests that it is part of a "legislative scheme . . . to penalize those in an apparent position of trust who would utilize their position or relationship to influence some governmental activity of [a] public official." *Id.* (reviewing the legislative codification of New Jersey Bribery statutes since 1898 and explaining the legislative purpose of the predecessor statue).

The Court also concludes that Ferriero's First Amendment argument is not "fairly debatable" given existing precedent. Indeed, the New Jersey Bribery Statute seeks to regulate bribery, which is routinely considered to be unprotected speech. *See United States v. Stevens*, 559 U.S. 460, 468-69 (2010) ("[S]peech integral to criminal conduct . . . ha[s] never been thought to raise any Constitutional problem."); *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) ("Words often are the sole means of committing crime—think bribery, perjury, blackmail, fraud. Yet the First Amendment does not disable governments from punishing these language-based crimes . . . ."); *United States v. Sayer*, No. 11-113, 2012 WL 1714746, at *2 (D. Me. May 15, 2012), *aff'd*, 748 F.3d 425 (1st Cir. 2014) ("Yes, emails and websites involve communication and in that sense are speech. But bribery, extortion, conspiracy, fraud, identity theft and threats also all involve communication, and speech in that sense, and yet they are crimes not protected by the First Amendment.").

In further support of his argument that the New Jersey Bribery Statute is unconstitutional, Ferriero alerted the Court to *McDonnell v. United States*, No. 15-474, 2016 WL 205948 (*cert.*

*granted* Jan. 15, 2016), in which the Supreme Court recently granted certiorari. The issue presented on appeal is:

> Under the federal bribery statute, Hobbs Act, and honest-services fraud statute, 18 U.S.C. §§ 201, 1346, 1951, it is a felony to agree to take "official action" in exchange for money, campaign contributions, or any other thing of value. The question presented is whether "official action" is limited to exercising actual governmental power, threatening to exercise such power, or pressuring others to exercise such power, and whether the jury must be so instructed; or, if not so limited, whether the Hobbs Act and honest-services fraud statute are unconstitutional.

*McDonnell v. United States*, No. 15-474, Question Presented.

The Court agrees with the government that it is unclear how the Supreme Court's ruling in *McDonnell* will further the arguments raised by Ferriero with respect to the New Jersey Bribery Statute. The issue in *McDonnell* involves whether or not the jury should have been instructed as to the potential limiting nature of the term "official action." *See id.* The New Jersey Bribery Statute does not contain the term "official action," nor does Ferriero argue that the jury should have been instructed as to "official action." Moreover, Ferriero is challenging the constitutionality of the New Jersey Bribery Statute for a wholly different reason—with respect to the definition of "benefit as consideration." The mere fact that the Supreme Court may find other fraud statutes unconstitutional, for different reasons, does not affect the significance (*i.e.*, whether the issue presented on appeal is "fairly debatable") of Ferriero's constitutional challenges to the New Jersey Bribery Statute.

Given the extensive legislative history and case law addressing bribery in New Jersey, as discussed in the Court's January 15, 2015 Opinion, and for the reasons stated herein, the Court concludes that Ferriero's argument as to the constitutionality of the New Jersey Bribery Statute is not "fairly debatable." Thus, Ferriero has failed to meet the third prong of the *Miller* standard.

*2. Undermining the Integrity of a Public Action*

Next, Ferriero asserts that the evidence was insufficient to establish that his undisclosed financial interest in C3 undermined the integrity of the boroughs' process in selecting C3. (Def. Mov. Br. at 6). According to Ferriero, this element is necessary to prove bribery in a political context under RICO and the Travel Act. (*Id.*).

The Court concludes that this argument is not "fairly debatable." Indeed, in his post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), Ferriero made a very similar, if not identical, argument. There, Ferriero argued that he was entitled to judgment of acquittal on Counts One and Three because the government failed to produce sufficient evidence that he possessed the apparent or actual ability to influence Bergen County municipal officials. (*See* D.E. No. 171, December 1, 2015 Post-Trial Opinion ("12/1 Op.") at 35). In support of this argument, Ferriero relied on *United States v. Dansker*, 537 F.2d 40 (3d Cir. 1976), which he also relies upon in support of the instant motion. (*See* Def. Mov. Br. at 6).

Ultimately, the Court concluded that "there was sufficient evidence that Ferriero possessed both the apparent and actual ability to influence Democratic, Bergen County municipal officials." (12/1 Op. at 36). Moreover, the Court concluded that "the government presented sufficient evidence that Ferriero agreed to 'exert [his] influence in a manner which would undermine the integrity of [a] public action.'" (*Id.* at 37 (quoting *Dansker*, 537 F.2d at 49)). The evidence presented at trial, as discussed at length in the Court's December 1, 2015 Opinion, demonstrated that Ferriero secretly accepted payments in exchange for his opinions, decisions, and recommendations as Chairman of the Bergen County Democratic Organization ("BCDO"), and that he provided these opinions, decisions, and recommendations without disclosing his financial interest in C3. (*See id.* at 37). In addition, the evidence demonstrated that Ferriero routinely

9

provided recommendations to Bergen County municipals officials in his capacity as BCDO Chairman.  (*Id.* at 36).

A defendant challenging the sufficiency of the evidence presented at trial bears a high burden.  *See United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992).  In viewing the evidence in the light most favorable to the government, the Court is satisfied that there is sufficient evidence to establish that Ferriero undermined the integrity of the process, and thus, this argument presents no substantial question of fact that would likely result in a reversal, order for a new trial, or a reduced sentenced.  *See United States v. Roudakov*, No. 03-91, 2005 WL 3263048, at *4 (E.D. Pa. Dec. 1, 2005) (holding that there was sufficient evidence to support the jury's finding of the defendant's guilt beyond a reasonable doubt because the defendant's "'sufficiency of the evidence' argument has no merit and provides no substantial question that would justify his release pending appeal"); *see also United States v. D'Amato*, 722 F. Supp. 221, 224 (E.D. Pa. 1989) (reasoning that the District Court carefully considered the defendant's sufficiency of the evidence argument in the post-trial motion, and thus, the defendant "can raise no substantial issue on appeal arising out of the sufficiency of the evidence").  Accordingly, Ferriero has failed to meet the third prong of the *Miller* standard.

### 3. *Post-RICO Enactment of the New Jersey Bribery Statute*

Ferriero argues that the New Jersey Bribery Statute cannot serve as a RICO predicate because the state bribery statute was not enacted until nine years after RICO became law in 1970.  (Def. Mov. Br. at 6-7).  According to Ferriero, a conviction under RICO must be predicated on acts which were chargeable under state law *at the time RICO was enacted* in 1970.[3]  (*Id.*).

---

[3] RICO defines "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, [or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C.A. § 1961(1)(A).

This is a new argument that was not previously raised by Ferriero. Accordingly, this argument will be subject to plain error review.

The Court concludes that there is no error, let alone plain error, because the issue raised by Ferriero is already governed by controlling precedent. In *United States v. Davis*, the Third Circuit held that the defendant's violation of a state bribery statute could serve as a RICO predicate, despite the fact that the bribery law's statute of limitations had expired by the time of the RICO indictment. 576 F.2d 1065, 1066-67 (3d Cir. 1978). According to the Third Circuit, the violation properly served as a RICO predicate because the acts were nevertheless chargeable under state law at the time the bribery itself was committed. In so holding, the Circuit explicitly defined "chargeable under State law" in § 1961(1)(A) to mean "chargeable under State law *at the time the offense was committed*." *Id.* at 1067 (emphasis added).

There is no dispute that Ferriero's actions were "chargeable under State law at the time the offense was committed." *Id.* Thus, under the application of § 1961(1)(A) mandated by *Davis*, Ferriero's bribery offenses properly served as RICO predicates. Accordingly, Ferriero's argument to the contrary is not "fairly debatable," and he has failed to establish the third prong of the *Miller* standard.

### B.  Count Three: Travel Act Violation, 18 U.S.C. § 1952(a)

Under Count Three of the Indictment, Ferriero was found guilty of violating the Travel Act, 18 U.S.C. § 1952(a), which states, in relevant part, that

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to –
>
>    (1) distribute the proceeds of any unlawful activity; or
>    (2) commit any crime of violence to further any unlawful activity; or
>    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, . . .

and thereafter performs or attempts to perform—

    (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned . . . .

18 U.S.C. § 1952(a).

Ferriero presents the following two arguments with respect to Count Three: (1) that the Count Three conviction should be reversed because the Travel Act was enacted before the New Jersey Bribery Statute criminalized unauthorized compensation paid to political party officials; and (2) the evidence produced at trial was insufficient to prove Count Three.[4]

    *1. Post-Travel Act Enactment of the New Jersey Bribery Statute*

Similar to Count One, Ferriero argues that that the Travel Act's proscription against certain "unlawful activity" refers only to activity which was unlawful at the time the Travel Act came into effect in 1961. While neither party cites to controlling precedent governing this issue, the Court is unpersuaded by the case law cited by Ferriero. Specifically, Ferriero cites *Perrin v. United States*, 444 U.S. 37 (1979), for the propositions that: (1) payments to a "party official" did not constitute bribery under the Travel Act in 1961, and (2) predicate crimes under the Travel Act can only be charged as the crimes were defined in 1961. (Def. Mov. Br. at 8).

However, as the Government notes, *Perrin* hurts, rather than helps, Ferriero's argument. In *Perrin*, the Supreme Court noted that in the Travel Act's legislative history, "[t]here are ample references to the bribery of state and local officials, but there is no indication that Congress intended to so limit its meaning." *Perrin*, 444 U.S. at 45. The Supreme Court further noted that in passing the Travel Act, "[t]he generic definition of bribery, rather than a narrow common-law

---

[4] With respect to Count Three, Ferriero also argued that the Court's jury instructions constructively amended the Indictment by permitting conviction on bases other than that charged in the Indictment. (Def. Mov. Br. at 8). Following the government's opposition, Ferriero withdrew this argument for the purposes of the instant motion. (Def. Reply Br. at 3). Accordingly, the Court need not address this issue.

12

definition, was intended by Congress." *Id.* at 49. It concluded that, while only certain states outlawed commercial bribery at the time, such commercial bribery by private parties was nevertheless encompassed within the meaning of "bribery" under the Act. *Id.* at 50. Thus, *Perrin* contradicts Ferriero's contention that "bribery" under the Travel Act should be limited to its narrow common law definition as it existed in 1961. And, even if the Court were to accept this argument, *Perrin* suggests that bribery by party officials would nevertheless have been covered by the Act at the time of its passage in 1961. *Id.* at 49. Thus, this argument is not "fairly debatable," and Ferriero has failed to establish the third prong of the *Miller* standard.

        2. *Sufficiency of the Evidence*

Next, Ferriero contends that the evidence was insufficient to establish that by causing his assistant to use the mail to send the signed incorporation document and money orders for SJC Consulting, LLC to Nevada that he "intended to 'establish' or 'facilitate' the 'carrying on' of any bribery." (Def. Mov. Br. at 6). Defendant raises this sufficiency argument for the first time in the present motion. Accordingly, the argument will be subject to, at most, plain error review on appeal. *See* Fed. R. Civ. P. 52(b).

The Court concludes that Ferriero has failed to meet his burden of establishing that this argument raises a substantial question of fact that is likely to result in reversal, an order of new trial, or a reduced sentence. A review of the evidence presented at trial suggests that a rational juror could find that Ferriero used the mail or any facility in interstate commerce with the intent to "distribute the proceeds . . . or . . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. 1952(a). With respect to Count Three, the jury was instructed that

> the government must prove beyond a reasonable doubt . . . that Joseph Ferriero used or caused the use of a facility in the interstate commerce with the intent to, one, distribute the proceeds of an unlawful activity, or two, promote or facilitate the

13

> promotion of an unlawful activity. The phrase "to distribute the proceeds of an unlawful activity" means the dividing or dealing out of the proceeds to persons involved in the unlawful activity. The phrase to promote or facilitate the promotion of any unlawful activity means to do any act that would cause in any way the unlawful activity described in count 3 to be accomplished or to assist that unlawful activity, namely, the solicitation, acceptance, or agreement to accept bribes in violation of New Jersey law in any way.

(4/7 Tr. 88:16-89:8).

The Court concludes that a rational juror could have found Ferriero guilty beyond a reasonable doubt of violating the Travel Act as charged. Indeed, there is sufficient evidence to establish that Ferriero caused his assistant to mail the signed SJC Consulting, LLC incorporation documents to Nevada. (GX 550C; GX 559; 3/18 P.M. Tr. 17:24-19:2). The evidence also indicates that John Carrino assisted with the incorporation process. (GX 550B; GX 557; GX 557A; 3/18 P.M. Tr. 6:20-8:12). Shortly after incorporation, SJC Consulting began receiving checks from John Carrino's company in accordance with Carrino and Ferriero's bribery scheme. (*See* GX 54; 3/18 P.M. Tr. 38:25-42:5). Moreover, after receiving payment from Carrino, SJC issued checks to Ferriero. (*See* GX 54). Based upon this evidence, a rational juror could find that Ferriero mailed the incorporation documents with the intent to "distribute the proceeds" or "promote, manage, establish or carry on" the bribery scheme. Accordingly, the Court concludes that the foregoing issue does not present a "fairly debatable" argument. Thus, Ferriero has failed to establish the third *Miller* prong.

### C. Count Five: Wire Fraud in Violation of 18 U.S.C. § 1343

Ferriero was found guilty of committing wire fraud in violation of 18 U.S.C. § 1343, which provides that:

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings,

14

signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . imprisoned.

Ferriero presents the following two arguments with respect to Count Five: (1) the Court did not instruct the jury to consider the "misrepresentation" element of wire fraud; and (2) the evidence produced at trial was insufficient to prove Count Five.

### 1. Jury Instruction

According to Ferriero, the instructions provided to the jury "constructively amended Count Five by failing to limit the jury's consideration of the 'misrepresentation' element of the wire fraud offense to the one statement and/or omission described in the indictment . . . and by failing to limit the jurisdictional element to proof of the email sent on July 9, 2008, as alleged." (Def. Mov. Br. at 9).

This argument was not raised during trial. Accordingly, as indicated above, this argument will be reviewed for plain error. To a further extent, the Third Circuit has stated that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007); *see also United States v. Eady*, No. 14-277, 2015 WL 8966988, at *4 (D.N.J. Dec. 14, 2015). "[A]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law." *Albrecht*, 485 F.3d at 129.

The Court concludes that Ferriero argument fails to meet the *Miller* standard. In particular, the Court concludes that, in the event of any error, it is not likely to result in reversal, an order of a new trial, or a reduced sentence. Ferriero did not object to the wire fraud instruction on the basis that is proffered now. Given this, the Third Circuit will review the argument under the plain error standard. Indeed, the Third Circuit has noted that it is the rare case in which a conviction is

overturned for an improper instruction that was not objected to, and that an incomplete instruction is less likely to be prejudicial.  *Albrecht*, 485 F.3d at 129.

Moreover, the Court is not persuaded by Ferriero's argument that the error, if any, constructively amended the Indictment.  "A constructive amendment occurs where a defendant is deprived of his substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002).  Where an error does not modify the elements of the charged offense, no constructive amendment has occurred.  *See United States v. Vosburgh,* 602 F.3d 512, 534 (3d Cir. 2010) ("[W]e believe that this error would not have created a constructive amendment of the indictment, because it would not modify "the elements of the crime charged.'" (quoting *United States v. Castro*, 776 F.2d 1118, 1122 (3d Cir. 1985))).

Here, the alleged error did not modify the elements of the charged offense.  The Indictment alleged that Ferriero "intentionally did devise and intend to devise a scheme and artifice to defraud . . . the Borough of Cliffside Park and to obtain money from  . . . Cliffside Park by means of materially false and fraudulent pretenses, representations, and promises."  (Ind. at 68). Moreover, the Indictment alleged that the "object of this scheme and artifice to defraud was for . . . FERRIERO . . . to make false representations and act under false pretenses by actively concealing and intentionally not disclosing to these municipalities and their officials . . . FERRIERO's personal financial interest."  (*Id.*).  The government presented evidence of the alleged bribery scheme at trial—none of which fell outside the scope of the charged conduct in the Indictment.  The Court's jury instruction as to wire fraud closely tracked the Third Circuit's Model Jury Instruction.  Thus, the alleged error did not modify the elements of the charged wire fraud offense.  If anything, the alleged error amounted to an omission, which the Third Circuit has identified as less prejudicial.

As such, the Court concludes that Ferriero's argument, with respect to the Count Five wire fraud jury instruction, is not likely to result in a reversal, order for a new trial, or a reduced sentence. Accordingly, Ferriero fails to the meet the *Miller* standard.

### 2. *Sufficiency of the Evidence*

Finally, Ferriero asserts that the government's case was insufficient with respect to Count Five. (Def. Mov. Br. at 10). In particular, Ferriero claims that Carrino's failure to disclose Ferriero's financial relationship with C3 did not constitute a "false" representation as required to establish wire fraud under 18 U.S.C. § 1343. (*Id.*). According to Ferriero, a statement can be false if it untrue on its face, if it involves a deceitful half-truth, or there is active concealment. (*Id.* at 11). But Ferriero asserts that these scenarios are not synonymous with omission or nondisclosure, and that Carrino's failure to volunteer information—beyond what was asked—cannot be viewed as concealment. (*Id.*).

The Court addressed this argument on Ferriero's Rules 29(a) and 29(c) motion, and held that the evidence sufficiently established that Carrino made a material misrepresentation on Ferriero's behalf. (12/1 Op. at 25, 39-40). For the same reasons as Ferriero's sufficiency of the evidence arguments with respect to Counts One and Three, the Court concludes that the contention does not present a substantial argument that is likely to result in reversal, order of a new trial, or a reduced sentence. Indeed, the evidence, as outlined in the Court's previous Opinion, was sufficient to establish that Carrino's failure to disclose Ferriero's financial interest was a material misrepresentation upon which a rational juror could find Ferriero guilty of wire fraud beyond a reasonable doubt. (*Id.*). Accordingly, Ferriero has failed to establish the third *Miller* prong.

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that Ferriero has failed to overcome the presumption of post-conviction detention by presenting an issue that warrants bail pending appeal.

In particular, Ferriero has failed to establish an argument on appeal that "raises a substantial question of law or fact" that is "likely to result in" reversal, order of a new trial, no term of imprisonment, or a reduced sentence.  *See* 18 U.S.C. § 3143(b)(1).  Accordingly, Ferriero's motion is DENIED.  An appropriate Order shall accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**